IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DANIEL LEE CINCOSKI                                                                                      PETITIONER

v.                            Civil No. 5:22-CV-05042

CIRCUIT JUDGE MARK LINDSAY[1]                                                          RESPONDENT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus by Petitioner Daniel L. Cincoski ("Cincoski"), a person civilly committed pursuant to judgment of acquittal by reason of mental disease or defect. (ECF No. 1).[2] The Respondent has not been directed to file a response and none is necessary. The matter is ready for report and recommendation.

**I.     BACKGROUND**

The Petition concerns Cincoski's criminal case filed in the Washington County Circuit Court, 4th Circuit Division 6, *State of Arkansas v. Cincoski,* 72CR-13-2095A.[3] Respondent Circuit Judge Mark Lindsay presided over this criminal case. Cincoski was charged with one count of terroristic threatening in the first degree, a class D felony. Pursuant to Ark. Code Ann.

---

[1] Circuit Judge Mark Lindsay is not the appropriate respondent because he is not the state officer who has custody of Cincoski. The correct respondent is the Director of the Department of Human Services into whose custody Cincoski was committed. However, substitution of the correct defendant is unnecessary for the reasons discussed in this report and recommendation.

[2] Petitioner refers to this as a 911 sentence. This is a reference to Act 911 of 1989, the Arkansas Conditional Release program with covers the evaluation, commitment, and conditional release of individuals acquitted of a crime when found not guilty by reason of mental disease or defect. *See* Ark. Code Ann. § 5-2-314.

[3] The docket sheets are public records available on the Arkansas Court Case Information database. https://caseinfo.arcourts.gov/cconnect/PROD/public/ck_public_qry_doct.cp_dktrpt_frames?backto=P&case_id=72CR-13-2095A&begin_date=&end_date= (accessed March 28, 2022).

1

§ 5-2-314(a)(1) Judge Lindsay found the offense involved substantial risk of bodily injury to another person or serious damage to the property of another, and Cincoski remained affected by mental disease. A judgment of acquittal was entered on October 15, 2015, and Cincoski was committed to the custody of the Director of the Department of Human Services. Ark. Code Ann. § 5-2-314(b)(1). In accordance with the judgment of acquittal, a civil commitment probate case was opened in the Pulaski County Circuit Court on November 17, 2015, *Daniel L. Cincoski,* 60PR-15-2141.

Cincoski brings this § 2241 petition challenging the validity of his conviction or sentence. (ECF No. 1 at 2). For his first ground for relief, Cincoski says: "A local agency is corrupting my ways and administering physical force of electrical current and shocks by remote means and obvious device into my brain, body, groin, penis, and rectum all day—every day since 2010." *Id.* at 6. When previously in the Arkansas Division of Correction ("ADC"), Cincoski says he was not evaluated for mental illness. He also believes he was retaliated against because he filed a civil rights action under 42 U.S.C. § 1983 "and torture is ongoing." *Id.* When he was living on his own, from 2012 to 2015, Cincoski says he was feloniously charged with terroristic threatening. *Id.* Cincoski indicates he did not present this ground on any appeal available to him. *Id.*

For his second ground for relief, Cincoski says he was part of a program at the Ozark Guidance Center to be restored to mental fitness for trial but was removed from that program and involuntarily sent to the Arkansas State Hospital. (ECF No. 1 at 6). Cincoski says he was "not guilty of terroristic threatening and failed to appear so I was given a charge I did not disserve (sic) now I'm stuck on 911 at Mid South Health Systems." *Id.* Cincoski indicates he did not present this ground on any appeal available to him. *Id.*

As his third ground for relief, Cincoski states "[t]he system purposely never examined me

2

for shocks administered directly into my brain, penis, rectum and body parts which alter my insight and perception." (ECF No. 1 at 6). Cincoski indicates while he was in the Washington County Detention Center and when he went to Ozark Guidance Center, he explained about the electrical current and shocks, but nothing was done. *Id.* Cincoski indicates he did not present this ground on any appeal available to him. *Id.*

Finally, for his fourth ground for relief Cincoski says he has "many witnesses and family members who can testify as experts and close friends who know about the technological harassment. (ECF No. 1 at 7). Cincoski's request for relief is for the "court to examin[e] me for the torture alleged and issue a writ releasing me from states custody and issue further screening by Mental Health Experts and P[h]ysicians." *Id.*

## II.     LEGAL STANDARD

The writ of habeas corpus has been recognized as "an integral part of our common-law heritage." *Preiser v. Rodriguez,* 411 U.S. 475, 485 (1973). Section 2241 extends the writ of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus provides a remedy for prisoners who challenge the "fact or duration of their physical confinement and are seeking immediate release or a speedier release." *Otey v. Hopkins,* 5 F.3d 1125, 1130 (8th Cir. 1993). "However, habeas corpus is an extraordinary remedy typically available only when the petitioner has no other remedy." *Id.* (cleaned up).

Several limitations exist to the right for habeas review including: (1) the "in custody" requirement of 28 U.S.C. § 2241(c)(3); (2) the 1-year statute of limitations set forth in 28 U.S.C. § 2244; and (3) the exhaustion principle.

### III. DISCUSSION

#### A. In Custody Requirement

The Supreme Court has interpreted the in custody requirement of 28 U.S.C. § 2241(c)(3) "as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook,* 490 U.S. 488, 490 (1989). While the in custody requirement is most commonly met by a person being held in custody pursuant to a state court criminal conviction, the Supreme Court has held there are "other types of state court judgments pursuant to which a person may be held in custody within the meaning of the federal habeas statute. For example, federal habeas corpus review is available for to challenge the legality of a state court order of civil commitment or a state court order of civil contempt." *Duncan v. Walker,* 533 U.S. 167, 176 (2001). The Court finds Cincoski meets the "in custody" requirement.

#### B. Timeliness of the Petition

Section § 2244(d)(1) provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claim presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The criminal information allegedly "feloniously" charging Cincoski with terroristic threatening was filed on December 19, 2013. The judgment of acquittal was entered on October 15, 2015, and Cincoski was committed to the custody of the Director of the Department of Human Services. Ark. Code Ann. § 5-2-314(b)(1). The civil commitment probate case was opened on November 17, 2015. Noting that Cincoski alleges the electrical current and shocks have been administered by remote means every day since 2010, Cincoski's claims challenging his confinement are barred by the 1-year statute of limitation.

### C. Actual Innocence Exception

In *McQuiggin v. Perkins,* 569 U.S. 383, 391-99 (2012), the Supreme Court recognized, in the context of a criminal conviction, a "miscarriage of justice" or "actual innocence" exception to the 1-year statute of limitations set forth in 28 U.S.C. § 2244. The Court stated that "[a]cutal innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *Id.* at 385. It noted that "tenable actual-innocence gateway pleas are rare" and require new evidence that "persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find [the petitioner] guilty." *Id.* The concept has been applied to claims (such as Cincoski's) that there was no basis for a civil commitment. *See e.g., Schmidt v. McCulloch,* 823 F.3d 1135, 1137 (7th Cir. 2015); *Rick v. Harpstead,* Case No. 19-cv-2827, 2021 WL 4810445, at *8 (D. Minn. Aug. 13, 2021)("[T]he justification for the existence of the gateway innocence exception—or its application—is no less compelling if a person's unconstitutional custody resulted from a civil rather than a criminal process").

New evidence means evidence that was "not available at trial and could not have been discovered earlier through the exercise of due diligence." *Osborne v. Purkett,* 411 F.3d 911, 920 (8th Cir. 2005)(cleaned up). The new evidence must be "so strong that a court cannot have confidence in the outcome of the trial." *McQuiggin,* 569 U.S. at 401 (cleaned up). Here, Cincoski does not allege the existence of any new evidence, and therefore, cannot meet the gateway actual innocence exception.

### D. Failure to Exhaust State Remedies

Even had this petition been timely asserted, it would fail as Cincoski has not exhausted his state law remedies. As stated by the Supreme Court in *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484 (1973):

> The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement. It cannot be used as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine and that called it into existence. As applied in our earlier decisions, the doctrine preserves the role of the state courts in the application and enforcement of federal law. Early federal intervention in state criminal proceedings would tend to remove federal questions from the state courts, isolate those courts from constitutional issues, and thereby remove their understanding of and hospitality to federally protected interests. Second, the doctrine preserves orderly administration of state judicial business, preventing the interruption of state adjudication by federal habeas proceedings. It is important that petitioners reach state appellate courts, which can develop and correct errors of state and federal law and most effectively supervise and impose uniformity on trial courts.

*Id.* at 490-91 (cleaned up).

The balance described by the Supreme Court in *Braden* is only preserved in this case by requiring Cincoski to first bring these issues to the state courts. The Arkansas statutes under which Cincoski has been civilly committed provide that the person acquitted may file at any time "with the circuit court that ordered the commitment a motion for hearing to determine whether the

6

person acquitted should be discharged from the facility in which the person acquitted is committed." Ark. Code Ann. 5-2-315(f)(1). Cincoski says he neither appealed the judgment of acquittal nor indicates he has filed any motion to be discharged from the facility in which he is committed. Cincoski has failed to exhaust his state law remedies.

## IV.   CONCLUSION

For these reasons, it is recommended that Cincoski's Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) be **DISMISSED WITHOUT PREJUDICE.**

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §§ 2253(b) & (c)(2); *see Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000). A "substantial showing" is a showing that "issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002)(cleaned up). Based upon the above analysis of Cincoski's § 2241 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends that a certificate of appealability be denied.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of March 2022.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE